**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

KALLE USA, LLC,

        Plaintiff,

    v.

UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity of Commissioner of United States Customs and Border Protection; and THE UNITED STATES OF AMERICA,

        Defendant.

Court No. _____

---

**COMPLAINT**

---

Plaintiff, Kalle USA, LLC ("Plaintiff" or "Kalle"), through its undersigned attorneys Quarles & Brady LLP, states as follows for its Complaint against Defendants United States Customs and Border Protection, Rodney S. Scott, and the United States of America (collectively "Defendants"):

**INTRODUCTION**

1.     Kalle seeks a judgment from this Court ordering Defendants to refund unlawfully collected duties that the United States Supreme Court vacated and declared unlawful.

2.     Defendants collected tariffs from Kalle that they had no authority to collect under the International Emergency Economic Powers Act ("IEEPA").

1

3.    IEEPA was the sole legal basis Defendants provided for the duties they collected from Kalle.

4.    The United States Supreme Court declared that IEEPA did not grant the President the authority to impose tariffs, as he did in the executive orders that Defendants relied on to collect duties from Kalle. *See Learning Resources, Inc. v. Trump*, No. 24–1287, 2026 WL 477534 (U.S. Feb. 20, 2026).

5.    Therefore, Kalle seeks judgment in its favor declaring that it is entitled to a refund of the duties that Defendants unlawfully collected based on IEEPA.

## PARTIES, JURISDICTION, AND VENUE

6.    Kalle is a U.S. importer with its principal place of business located at 5750B Centerpoint Court, Gurnee, Illinois 60031.

7.    Kalle imports merchandise from countries whose imports were subject to the IEEPA tariffs, including, without limitation, Spain, Denmark, Belgium, Poland, and Hungary.

8.    Defendant, United States Customs and Border Protection ("CBP") is an agency of the United States Department of Homeland Security headquartered at 1300 Pennsylvania Avenue NW, Washington, D.C.

9.    Defendant, Rodney Scott, is CBP's Commissioner. In his official capacity, Defendant Scott supervises and oversees the collection of tariff duties by CBP.

10.    Defendant United States of America received the unlawfully collected duties at issue in this lawsuit and is a proper defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

11.    The Court of International Trade has subject matter jurisdiction under 28 U.S.C. § 1581(i)(1).

2

12.    This action "arises out of . . . law of the United States providing for . . . tariffs," and this Court therefore has jurisdiction for the reasons the United States Supreme Court articulated in *Learning Resources*. *See Learning Resources*, 2026 WL 477534, at *5 n.1.

13.    As the importer of record for the goods identified in this Complaint, Kalle has standing to sue in this case because it paid duties to Defendants that were unlawful. Kalle therefore is adversely affected or aggrieved by CBP's actions, which this Court can remedy through declaratory, injunctive, or other applicable forms of relief.

## **FACTUAL BACKGROUND**

### A.  The IEEPA Executive Orders

14.    This case relates to duties that Defendants unlawfully collected from Kalle under executive orders that President Donald Trump issued in 2025.

15.    President Trump issued executive orders under IEEPA which Defendants enforced by collecting tariffs from Kalle.

16.    The specific executive orders at issue in this litigation are:

   a.    Exec. Order No. 14194, *Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025);

   b.    Exec. Order No. 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025);

   c.    Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 7, 2025);

d.  Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025);

e.  Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025);

f.  Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025);

g.  Exec. Order No. 14259*, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025); and

h.  Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025), 90 Fed. Reg. 15,625 (Apr. 15, 2025).[1]

17.  Under 19 U.S.C. § 1500, Defendant CBP has the authority to "fix the final classification and rate of duty applicable" to imported merchandise, and to "liquidate the entry and reconciliation, if any," of such merchandise.

18.  Under 19 U.S.C. § 1502(b), officers of Defendant CBP have the duty to "execute and carry into effect all instructions" of Defendant United States, through the Secretary of the Treasury, "relative to the execution of the revenue laws[.]"

---

[1] Kalle refers to these executive orders collectively as the "IEEPA Executive Orders."

**B. Defendants' Collection of Duties from Kalle Under the IEEPA Executive Orders**

19.    Kalle imports food products, cleaning products, and other related goods into the United States.

20.    Kalle is the importer of record for goods with the following Harmonized Tariff Schedule of the United States ("HTSUS") Codes from Spain, Denmark, Belgium, Poland, and Hungary:

  a.    HTSUS Heading 1302: Vegetable saps and extracts; pectic substances, pectinates and pectates; agar-agar and other mucilages and thickeners, whether or not modified, derived from vegetable products

  b.    HSTUS Heading 1510: Other oils and their fractions, obtained solely from olives, whether or not refined, but not chemically modified, including blends of these oils and fractions with oils or fractions of heading 1509

  c.    HTSUS Heading 1702: Other sugars, including chemically pure lactose, maltose, glucose and fructose, in solid form; sugar syrups not containing added flavoring or coloring matter; artificial honey, whether or not mixed with natural honey; caramel

  d.    HTSUS Heading 3913: Natural polymers (for example, alginic acid) and modified natural polymers (for example, hardened proteins, chemical derivatives of natural rubber), not elsewhere specified or included, in primary forms

  e.    HTSUS Heading 3917: Tubes, pipes and hoses and fittings therefor (for example, joints, elbows, flanges), of plastics

f.     HTSUS Heading 3926: Other articles of plastics and articles of other materials of headings 3901 to 3914

g.     HTSUS Heading 4819: Cartons, boxes, cases, bags and other packing containers, of paper, paperboard, cellulose wadding or webs of cellulose fibers; box files, letter trays and similar articles, of paper or paperboard of a kind used in offices, shops or the like

h.     HTSUS Heading 4823: Other paper, paperboard, cellulose wadding and webs of cellulose fibers, cut to size or shape; other articles of paper pulp, paper, paperboard, cellulose wadding or webs of cellulose fibers

i.     HTSUS Heading 5906: Rubberized textile fabrics, other than those of heading 5902

j.     HTSUS Heading 6307: Other made up articles, including dress patterns

k.     HTSUS Heading 8422: Dishwashing machines; machinery for cleaning or drying bottles or other containers; machinery for filling, closing, sealing or labeling bottles, cans, boxes, bags or other containers; machinery for capsuling bottles, jars, tubes and similar containers; other packing or wrapping machinery (including heat-shrink wrapping machinery); machinery for aerating beverages; parts thereof

l.     HTSUS Heading 8438: Machinery, not specified or included elsewhere in this chapter, for the industrial preparation or manufacture of food or drink, other than machinery for the extraction or preparation of animal or fixed vegetable or microbial fats or oils; parts thereof

(collectively, the "Merchandise").

6

21. Following the entry-into-force of the IEEPA Executive Orders, Defendant CBP collected duties from Kalle for the Merchandise at rates established in the IEEPA Executive Orders.

22. Defendant CBP collected the duties from Kalle based on authorization that Defendants Scott and the United States of America provided.

23. CBP assessed the duties it collected from Kalle pursuant to its classification and appraisement of merchandise under the HTSUS.

24. CBP assessed the duties it collected from Kalle after assessing duties based on HTSUS classifications that Defendant, the United States of America issued following the entry-into-force of the IEEPA Executive Orders.

25. Kalle paid duties on entries that were both liquidated and unliquidated.

26. Kalle seeks the refund of both liquidated and unliquidated entry duties through this action.

27. Under 19 C.F.R. § 159.1, "liquidation" is "the final computation or ascertainment of duties on entries for consumption or drawback entries."

28. Although an importer typically has 180 days following liquidation to protest the liquidation, an importer is not able to protest a "ministerial" CBP liquidation that CBP is collecting without exercising any discretion. "A protestable decision . . . requires Customs to have engaged in some sort of decision-making process." *Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024) (quotation marks omitted).

29. CBP's collection of duties on entries—liquidated or unliquidated—under the IEEPA Executive Orders was a ministerial exercise of its authority to collect tariffs.

30.     Because CBP acted in a ministerial capacity in assessing tariffs on Kalle's Merchandise, protest of Defendants' collection of duties from Kalle under the IEEPA Executive Orders therefore would have been futile.

## C. The United States Supreme Court Declares that the IEEPA Executive Orders Were Unlawful

31.     IEEPA was the sole legal basis for the duties that Defendants collected from Kalle.

32.     On February 20, 2026, the Supreme Court of the United States held that IEEPA did not authorize the President to impose tariffs. *Learning Resources*, 2026 WL 477534, at *5. ("[T]he President asserts the independent power to impose tariffs on imports from any country, of any product, at any rate, for any amount of time. Those words cannot bear such weight."); *id*. at *20 ("[W]e hold that IEEPA does not authorize the President to impose tariffs.").

33.     The IEEPA Executive Orders were unlawful dating back to their entry-into-force because, as the Supreme Court held, IEEPA does not authorize the President to impose tariffs.

34.     Defendants therefore did not have a legal basis to collect duties from Kalle under the IEEPA Executive Orders.

35.     The IEEPA Executive Orders were void as a matter of law when they entered into force because the President does not have the authority to impose tariffs under IEEPA.

## D. Judge Eaton Orders CBP to Liquidate Entries Removing IEEPA Duties and Reliquidate Liquidated Entries Removing IEEPA Duties in *Atmus Filtration, Inc. v. United States*

36.     On or about March 4, 2026, this Court in *Atmus Filtration, Inc. v. United States* ordered CBP to "liquidate . . . entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties." *See Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026) (Doc. 21).

8

37. On or about March 5, 2026, this Court amended its order but still ordered CBP to "liquidate . . . entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties." *See id.* (Doc. 29).

38. On or about March 6, 2026, this Court suspended the March 5, 2026 amended order "to the extent that it directs immediate compliance" in response to the Declaration of Brandon Lord. *See id*. (Doc. 33; Doc. 31).

39. It is unclear whether Defendants will adequately or timely comply with the Court's amended order to refund IEEPA tariffs to importers like Kalle.

40. Thus, Kalle files this suit because Defendants are required to refund Kalle for the tariffs it paid under IEEPA as to both Kalle's liquidated and unliquidated entries as requested in this Complaint's prayer for relief stated below.

## COUNT ONE
### *Ultra Vires* Action—*Learning Resources, Inc. v. Trump*

41. Kalle realleges and incorporates by reference paragraphs 1–40 as if fully stated herein.

42. Defendants collected import duties from Kalle under the IEEPA Executive Orders.

43. The United States Supreme Court held on February 20, 2026, in *Learning Resources, Inc. v. Trump*, that IEEPA does not authorize the President to impose tariffs.

44. Rather, IEEPA delegates to the President the authority to "investigate, block . . . regulate, direct and compel, nullify, void, prevent or prohibit" the importation or exportation of foreign goods, but it does not give the President the authority to impose tariffs. *Learning Resources*, 2026 WL 477534, at *14.

45. The IEEPA Executive Orders relied on IEEPA to impose tariffs that Defendants collected from Kalle.

46.     All of the IEEPA Executive Orders are unlawful. To the extent that the Supreme Court did not expressly identify individual executive orders within the IEEPA Executive Orders as unlawful, those executive orders still are unlawful because of their reliance on IEEPA to impose tariffs.

47.     Kalle therefore respectfully requests that this Court declare that the IEEPA Executive Orders are unlawful as applied to Kalle, enjoin Defendants from enforcing the IEEPA Executive Orders against Kalle, and order the refund of all duties that Defendants collected from Kalle under the IEEPA Executive Orders.

48.     Kalle respectfully requests that the Court assess interest on all refunded duties as allowed under applicable law.

**COUNT TWO**
**Declaratory Judgment**

49.     Kalle realleges and incorporates by reference paragraphs 1–48 as if fully stated herein.

50.     Under 28 U.S.C. § 2201(a), this Court has the authority to "declare the rights and other legal relations" of Kalle as to the IEEPA Executive Orders and Defendants' actions.

51.     Kalle's claims present an actual controversy as to Defendants' authority to collect tariffs from Kalle.

52.     Kalle is an importer of record and has suffered injury through Defendants' requirement that Kalle pay tariffs that the IEEPA Executive Orders imposed, which the United States Supreme Court has since declared unlawful.

53.     Kalle asks this Court to exercise its power to enter a declaratory judgment that the IEEPA Executive Orders are unlawful as applied to Kalle, and that Defendants did not have and do not have the authority to collect tariffs imposed under the IEEPA Executive Orders.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Kalle USA, LLC respectfully requests the following relief:

A.      A declaration that the IEEPA Executive Orders, as applied to Kalle, are unlawful under *Learning Resources, Inc. v. Trump*;

B.      A declaration that the IEEPA Executive Orders are void *ab initio* as applied to Kalle;

C.      A declaration that Defendants did not have and do not have lawful authority to assess duties for Merchandise that Kalle imported under the IEEPA Executive Orders;

D.      An injunction barring Defendants from collecting any tariffs that are unlawful under the IEEPA Executive Orders;

E.      An order requiring Defendants to refund all duties that Defendants collected on Merchandise Kalle imported, regardless of liquidation status;

F.      An award of interest, reasonable costs and attorneys' fees associated with bringing this action, as allowed under applicable law; and

G.      Any other relief this Court deems just and proper.

11

Dated this March 19, 2026.

Respectfully submitted,

Quarles & Brady LLP

/s/ Steven V. Hunter

Steven V. Hunter
QUARLES & BRADY LLP
155 North Wacker Drive, Suite 3200
Chicago, IL  60606
(312) 715-5087 – Telephone
Steven.Hunter@quarles.com

*Counsel for Plaintiff Kalle USA, LLC*